Machinists and Airspace Workers, District Lodge 1, and IAM, National Pension Fund. Mr. Fay for the appellants, Mr. Siegel for the appellees. So, good morning, counsel. Please proceed. Good morning, your honors, and may it please the court, my name is Raymond Fay, and I represent the appellants. The decision of the IAM Fund Appeals Committee to deprive Mr. Anthony of his participation rights and benefits was not reasonable by any measure in three principal ways. The first was the referral to the employer. When the Plans and Appeals Committee said District Lodge 1 unilaterally determines who is to be covered for the purposes of this pension contributions. That's at the appendix page 433. Planned documents govern, but there's nothing in the plan that authorizes this. The relevant plan-related documents are the participation agreements, and those are bilateral agreements. In paragraph 9, they make clear that the trustees, not the employer, has the full discretion and authority to adopt the participation rules. The district court concluded that the committee was merely requesting information. That doesn't square with the unilaterally determines decision adopted by the plan. In fact, the first question put to the union was, what job classifications did District Lodge 1 intend to contribute? It's appendix page 361. That's an ultimate issue, not an informational request. The second reason that the decision was unreasonable was that the committee did not decide the matter on the basis of unambiguous language of the participation agreements. Any discretionary authority of the plan to interpret its own documents is limited to interpreting ambiguous plan terms. Mr. Fay, can I interrupt? In paragraph 2 of the participation agreement, it has this phrase, which, as I understand the lower court's decision, is the key phrase that turns what would otherwise be an unambiguous word, employees, or an unambiguous phrase, all its employees, into an ambiguous phrase. And the phrase in paragraph 2 is all employees in all job classifications covered by this agreement. Okay, in all job classifications. What is a reasonable person supposed to make of those four words in all job classifications? What is a reasonable person supposed to think is the work that those four words are doing? In a nutshell, all work except those classifications covered by the collective bargaining agreement. And in all job classifications means, in all job classifications covered by this agreement means not covered by collective bargaining agreement. It's just another way to say not covered by collective bargaining agreement. Yes, Your Honor. It said that in the previous paragraph, and you have to read the things together. The district court paid lip service to that, but she did not implement it. So when you read the agreement as a whole, the first two paragraphs, we can see that that's exactly what there's no other way to read it, because it covers participation and coverage for all employees, as said in the first paragraph. And in the second paragraph, it refers to all job classifications covered, which as explained in the second paragraph, says that the words you pointed to and as the first paragraph explains, it's all the classifications covered, excuse me, that are not covered by a CBA. Mr. Fay, I think I only have one other question from from me to you. What what law do you think governs what's what state law or is it is it Washington, D.C. common law governs our interpretation of this? Or is it a is it some kind of Arisa based narrow federal common law? That's an exception to the general rule that there's no general federal common law. Well, there is there are narrow exceptions to that, but I don't think it applies in this context because because the basic, the more fundamental statutory rules are going to govern the way in which the plan is interpreted that the discretion. Let's just say, Mr. Fay, let's just imagine that there's a statute of limitations issue on this country, on this dispute. There isn't. But let's just say that there is. Would we look to D.C., Washington, D.C., local law for that statute of limitations question? Would we look would we look to Pennsylvania? I believe we'd look to the federal jurisprudence that interprets the statutes of limitations within the Arisa statute. So that does sound like some kind of narrow carve out a federal common law as opposed to the rule, there's no general federal common law. What I meant is what I'm trying to say to blend the two together is that Arisa already has a structure and that's interpreted by the federal courts typically. And whether it's a statute of limitations, which is contained, there are statutes of limitations contained within Arisa or the principles concerning the interpretation of plan documents. Those are it's kind of a web of all these obligations. That's why the plan committee is the delegated fiduciary. And that's why the matter should not have gone beyond that. And what is your best citation for that? Well, as we explained in our brief, if you look at the appeals committee charter, which is pages 850 and 851 of the appendix, you'll see that the trustees could delegate, and there are other provisions we cited in our brief, and delegate certain fiduciary functions, which it did. It delegated to the appeals committee the right to decide all of these participant appeals. It didn't go beyond that. There's nothing in the charter, which allows to refer matters out to a non fiduciary in here, the employer. And there is nothing in the plan that says that we're going to have an exception, and the union employer will decide participation rights in this instance. Anything further? Yes, Ron. I just touched on it, but the third, beyond the ambiguity issue, the third element is the subdelegation, and that I've just described. The subdelegation to the non fiduciary, namely the employer. A very brief word about the motion to alter or amend the judgment. As set forth in our brief, the appeal can be decided in Anthony's favor without reference to the motion. But the motion has merit because the misrepresentation about Powell's status changed the course of the case, and was a key element in the district court's decision, as seen on page 58. And the only other thing I'd say about it right now is that the court and the defendants focused on the new evidence prong of Rule 59, when clearly the manifest injustice standard was the overriding concern. And similarly, under Rule 63, misconduct was shown by clear and convincing evidence. And my opponents, instead of addressing the wrongful result, which was within their clear knowledge, they erected the technical barriers to it. But, for example, the non-near say aspect of Rule 801, they said, for example, well, Powell went to a different employer. But the disclosure statement of District Lodge 1, in its brief, in this case, confirms that it's simply a different arm of the same employer. Powell went upstairs to the organized... I don't know if you could do anything to be clearer, but you're really breaking up. I don't know if it's more consistent, closer to the microphone. It's very difficult to hear you. Okay. I am sorry about that, and asked if I speak slower. Is that better? A little bit. Let me ask you, you were just addressing the motion to amend? Yes, I was. Your suggestion is that presumption of regularity in the administration of a fund, in the context of ERISA, somehow affects the rules and the burdens here. Do you have any authority for that? Any cases? No, I don't have specific cases. Just the overall structure of ERISA and the way it's supposed to work. Okay. And I'll reserve the mic if there are any other questions. Thank you. All right. We'll hear from counsel. Thank you. I'm sorry, Your Honor, for interrupting. Good morning, Your Honors, and may it please the court. My name is Richard Siegel of Slevin and Hart PC. I represent the IAM National Pension Fund, and will be speaking on behalf of both appellees. Mr. Siegel, can I ask you to start where Mr. Fay left off before you get into the more merits-type things? He was talking about the question of Powell and whether he got paid or not, or whether he qualifies for coverage or not. JA-377, or thereabouts, refers to something from the record, AR-262, where you have represented – this is an email from – a letter from Tony Armadale of the union to Mr. Tierney of the fund. And here's what it says. I just have a simple question. I'm sorry, what page are you on? It's from AR-262, a letter from Tony Armadale. Yeah. Let's see if I can find it in the JA. I think it starts at JA-377, and there's a letter from Armadale to Tierney. My question, Mr. Siegel, is, is that statement correct? You submitted it. Is it correct? Your Honor, I apologize. In the interest of finding the page, could you direct me to the statement that you were referring to on the page? Apologies. Yes. Let me – I'm sorry. I should have known the exact JA page, not just the exact AR page. But I can read it to you. It's only one sentence. Brother Powell does not presently, nor has he ever, had contributions made on his behalf by the district lodge to the fund, nor is he entitled to as the district lodge organizer. It's basically just saying Brother Powell is not entitled to coverage by the fund. And I'm just wondering if that statement is – All right. It's on page – it's A-381. Thank you. Thank you very much, Justice Pillard. I apologize for not having that – having the page. Just, like, four lines from the top. And so your question is, does Mr. Powell actually receive benefits from the fund? That is basically the substance of my question, but maybe since we're – I'm really asking about something from the record. Is that statement in the record correct? The statement says Brother Powell is not covered by the fund. Is that statement correct? To my information, yes. There is no – there is certainly – and what is – for the purposes of this court's review, there is nothing in the administrative record to contradict that statement. No evidence – this court's review is to evaluate the committee's decision based upon the information and evidence that was presented to it. There was no information or evidence presented to it to contradict that statement regarding Mr. Powell. And Mr. Siegel – It's a little – Mr. Siegel, I think it's a little, I think, odd, or maybe I shouldn't think it's odd, but your lodge only has, I think, three or four or five employees. And you're the counsel for the lodge, and you submitted a statement saying Powell is not covered. And now you're not sure whether he's covered. To clarify, Mr. – to clarify, Your Honor, I'm sorry. I represent the fund, not the district lodge. Oh, that's true. I am sorry. I apologize. I'm speaking on behalf of both. But to the limited information that I have is no, that is – is that that was a factually correct statement regarding Mr. Powell. But more directly, no contradictory evidence was presented to the committee, and this court can only review what was presented to the committee. Right, which is a slightly different issue. Yes. And then I also wonder if you could answer the question I asked Mr. Fay about what law do you think – what kind of common law do you think applies to our interpretation of this contract? Do you think it's D.C. local, common law, or something else? I think it's actually somewhat of a mix. There is a common law under – in ERISA. There is a developed federal common law in ERISA cases. For example, the entire premise that this court reviews the committee's decision as a matter of discretion isn't found in the ERISA statute. It is a judicially created doctrine. At the same time, you asked the question regarding the statute of limitations and the general accepted rule of law under the federal common law of ERISA is that in cases like this, you adopt the most analogous state law. So, for example, the statute of limitations that would be applicable in this case would be the District of Columbia's statute of limitations for breach of contract actions by analogy. And that would apply to our interpretation of the participation agreement. I believe that is correct, subject to the caveat that, of course, you review the committee's decisions with deference to the committee. So, that is the ERISA layer that I would put on top of the state law layer, which is that you might start with the fundamental of DC, but you must also defer to the committee's decision so long as it is reasonable. Mr. Siegel, just stepping back a moment and stepping back from the issue a little bit. You and Judge Walker were discussing whether this representation about Powell was correct, is correct, whether there's any record showing otherwise. I have a more fundamental question, which is, if it were wrong, and if Anthony had presented evidence at the time the record was open that Powell actually was receiving benefits in some period of time when he was in the job that Anthony had held, that wouldn't undermine the union or the fund's position, would it? I don't think it would. I think the committee could have still reached the decision that it reached. It would have had to have made a decision based upon competing evidence rather than the unilateral evidence that was actually presented. Is it competing evidence? Because as I understand the Lodge's interpretation, it's interpreting the second clause as, you know, applying to job classifications for which contributions are required by a written agreement. And if the Lodge entered a written agreement to cover organizers that it hadn't previously covered, there's nothing that would prohibit that. But the question for Anthony is, is there something that required it? And so I guess I'm just, and Mr. Fay can address this also in his rebuttal, I'm just, I mean, dishonesty is dishonesty and that's something of concern, but I'm trying to understand apart from any question, you know, what is the theory of relevance or not of this statement and whether my appreciation of its relevance or not is correct? I believe I understand your question, Your Honor. So my answer would be, or my answer is that insofar as the fact that, I'm sorry, the allegation, because it's not a fact, the allegation that Mr. Powell receives benefits from the fund to the extent that could weigh on whether organizers were to be covered by the participation agreements as they existed during the time of Mr. Anthony's employment. That I suppose could be competing evidence, but I certainly agree as I understood your question to be that there would be nothing to preclude the District Lodge after Mr. Anthony left the District Lodge's employment to sign a new participation agreement on behalf of organizers that would cover Mr. Powell. Of course, because Mr. Anthony did not present or raise any issues to the committee, disagreeing with the, with what the committee was told regarding Mr. Powell, there was no basis for the committee to conduct further investigation into that. And of course, it didn't even come up during the course of the district court, of the district court litigation, but instead it only came up during, it only came up during the post-judgment motion. And referring back to an issue that Judge Walker raised during Mr. Fay's presentation, looking to the participation agreement itself, it's in the append, an example, A411 is as an example, Mr. Fay gave the answer that all job classifications means essentially all employees, that it is indistinguishable. I apologize, I realize I'm out of time. May I finish this point? Yes, please. If you read paragraph two of these participation agreements, and then do what Mr. Anthony, I'm sorry, Mr. Anthony through his counsel suggests and interpret all job classifications to in fact mean all employees, then the effect of that would be to read the words regarding job classifications out of the participation agreement. It would have, if you read the words in all job classifications covered by this agreement, out of paragraph two, paragraph two would have the exact same meaning according to Mr. Fay, in that it would read that the lodge shall contribute to the fund for each hour day or portion thereof for which all employees are entitled to receive pay as follows. It would have the same meaning without job classifications. And so in that context, the district court correctly found there to be an ambiguity. I understand. What do you, what do you think? I'm happy to answer questions. Yes, Judge Walker. I'm good. Okay. You sure? Thank you, though. I am. All right, Judge Pillard, anything? No, thank you. Thank you. All right. Thank you. All right. Oh, counsel for appellant. Give you a couple of minutes. Thank you. Thank you. Executive director Tierney explained it very well before this matter was referred to appendix to 71. He said that the participation agreements do not define any specific job classifications nor eliminate jobs from coverage. That is why the executive director felt that the term all employees meant all job classifications. Granted, it was the custom to enter a new participation agreement if the rate changed or this very tiny universe of employees, not collective bargaining agreements expanded. But it was undisputed that they were all the same. The participants were identical all along. The agnosticism that was expressed by the fund to say, I believe it was said in the brief, the fund has absolutely no reason to believe that Anthony's allegations regarding Powell are in any way accurate. Well, that's not true. It's the plan. The plan knows who the participants are. Just look at the roster and they'll know if Powell was on or is on the roster or not. Talk about all these ways of gathering their employees and keeping track of a very simple matter. So, you know, everybody's got a right to argue these technical matters, but I think the truth is going to govern here because we're looking for federal rights that would ignore to Mr. Anthony and others. And if there weren't to be exceptions made, should have been made for him. Let me ask you the same question, Mr. Fay, that I had asked Mr. Segal because it really is better directed at you. And I understand the consternation about a statement being made in the record that you learned or Mr. Anthony had had reason to think was made in error and perhaps knowingly in error. It's a serious. It's a serious issue. But imagine that you that Anthony had made the phone call and the information had come in when the record going to the committee and or to the district court was still open. Am I wrong that the committee could still have interpreted the plan and its reference to employment and a job classification for which employer contributions are required to this plan by a written agreement between the trustees and a contributing lodge could still have been met in both Anthony's case and in Powell's case, because what happened by hypothesis between Anthony's case and Powell's case is that a new written agreement was entered, including the organizer job classification in the category for which employer contributions are required. In other words, it was a decision made to confer this benefit on an employee in a category that had not previously received the benefit. What am I missing? Yeah, again, Your Honor, the job classifications aren't specified in the participation agreements. They're only handful of them. They're only handful of employees that were not collected bargaining agreement and employed by District Lodge one. In each case, the rate. If the rate change they issued a new participation agreement, but the words of those first two paragraphs statement. Mr Fay we're having trouble hearing you. I apologize. Trying to get maybe I get closer, and then my head gets too big. Yes, if you would repeat your last sentence. I'm sorry on the last sentence was that in the course of all these dealings when a new person came in the participation agreement read identical the job classification was not specified in any of the participation agreements. Right. But there has to be some mechanism by which the Lodge tells the fund. These are the employees that we are going to be regularly contributing toward toward whose pensions will we're going to be regularly contributing my understanding from this record is that they actually entered into a separate participation agreement for each employee. So they could add on a third one and the secretary they have the blanking on the name but the business business agent representative yes representative and then, and then they could say okay we're going to do a third one of these for the organizer, and that would make clear who they're covering it or not. Well, that would that would make clear who they who they said they were desiring to cover, but if the participation agreements which, in this case, are the governing plan related documents. If those specify all employees and all job classifications are to get these benefits and that's the end of the matter. And that's why I pointed to what Mr Terry said because he said well, it doesn't specify define the job classification, but it doesn't eliminate them either. And that's why we end up back when you read the agreements as a whole, it comes back to all employees. All right. Anything further. Thank you very much. Thank you very much. We'll take the case under advisement.
judges: Rogers, Pillard, Walker